UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------x
In re:                                        :
                                              :       Case No. 02-12411 (CB)
BRITESTARR HOMES, INC.,                       :
                                              :       Chapter 11
              Debtor.                         :
-------------------------------------------------------x
BRITESTARR HOMES, INC.,                       :
                                              :       Adv. Pro. No.:
              Plaintiff,                      :
                                              :
   - against -                                :
                                              :
ABB EQUITY VENTURES, INC., and                :
                                              :
OAK POINT PROPERTY, INC.,                     :
                                              :
              Defendants.                     :
-------------------------------------------------------x
```

## COMPLAINT

The Plaintiff, BRITESTARR HOMES, INC. ("Britestarr" or the "Debtor"), by its undersigned counsel, complaining of the defendants, avers upon information and belief, as follows:

## THE PARTIES

1.  At all times hereinafter mentioned, Britestarr was a corporation duly incorporated within the State of New York and maintained an address at 400 Oak Point Avenue, Bronx, New York 10455.

2.  On May 20, 2002 the Debtor filed a petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

3.  The Debtor is the owner of a 28 acre parcel of land located in Borough

and County of Bronx and the State of New York (the "Property"), commonly known as the Oak Point Property, being a part of lot 74, Block 2604 and also easements in Lot 252 and Lot 195 in Block 2604 and Block 2602, Lot 63.  The Property presented an ideal location for development as an electric generating power plant and was one of few available sites within New York City.

4. At all times hereinafter mentioned, David Norkin was the President of the Debtor and is its sole shareholder.

5. At all times hereinafter mentioned, defendants ABB Equity Ventures, Inc. ("ABB EV"), was and is a corporation duly incorporated in the State of Delaware, having an address at 202 Carnegie Center, Suite 100, Princeton, New Jersey.

6. Upon information and belief, ABB Equity Ventures, Inc. is the successor in interest to ABB Energy Ventures, Inc. and a consolidated subsidiary of ABB Ltd. ("ABB Group").

7. Defendant, Oak Point Property, Inc. is a wholly-owned subsidiary of ABB EV.

8. Upon information and belief, ABB Group is a corporation organized under the laws of Switzerland with headquarters in Zurich, Switzerland.

9. Upon information and belief, ABB Group is one of the largest industrial, engineering, energy, and automation companies in the world.

## FACTS

10. On September 7, 1988, Britestarr entered into a loan with Lloyds Bank PLC in which Lloyds Bank PLC loaned to Britestarr the principal amount of $4,450,000 transaction (the "Loan").  A portion of these funds was used by Britestarr to purchase the

Property.

11. Upon information and belief, Lloyds TSB Bank, PLC ("Lloyds") is the successor in interest to Lloyds Bank PLC.

12. Britestarr executed a series of documents relating to the Loan, including a Mortgage Note, dated September 7, 1988 (the "Note"), and a Mortgage, dated September 7, 1988 (the "Mortgage") and recorded in Bronx County, New York on January 27, 1989.

13. In addition to the Note and the Mortgage, David Norkin and his then wife, Friema Norkin, executed an unconditional guaranty of payment of the Loan, dated as of September 7, 1988 (the "Guaranty").

14. As partial security for the Guaranty, Friema Norkin, the then sole shareholder of Britestarr, pledged the outstanding shares of Britestarr that she held to Lloyds, as evidenced by the Pledge Agreement, dated September 7, 1988 (the "Pledge Agreement" and together with the Guaranty, and the Note, the "Lloyds Documents").

15. On July 16, 1993, Lloyds filed a Satisfaction of Mortgage in Bronx County, New York regarding the Mortgage.

16. On or about December 31, 1998, Britestarr executed a certain Option Agreement with ABB EV for the sale of the Property for between $32 million and $35 million (the "Option Agreement").

17. Pursuant to the Option Agreement, plaintiff could not convey or permit the involuntary conveyance of the Property during the option period from December 31, 1998 to December 31, 2001.

18. During the term of the Option Agreement, ABB EV consistently failed to

make required option payments by the payment dates set forth in the Option Agreement, but only made payment during the final days of each respective grace period after threatened termination.

19. In March 2001, facing termination due to a missed option payment, ABB EV commenced an action against Britestarr in the Supreme Court, New York County, under Index No. 601230/2001. In this action, ABB EV sought to reform and extend the Option Agreement after the Debtor had refused ABB EV's request to extend the Option Agreement.

20. On April 11, 2001, defendants moved the Supreme Court, County of New York, before the Honorable Ira Gammerman, for an Order granting it a preliminary injunction enjoining Britestarr from terminating its exclusive option and/or preventing Britestarr from selling and/or providing an option to any third party (the "New York County Proceeding").

21. On April 11, 2001, the Honorable Ira Gammerman issued an Order denying ABB EV's request for a preliminary injunction and vacating the Temporary Restraining Order. The Appellate Division, First Department, Supreme Court of the State of New York affirmed that order.

22. Oak Point Property, Inc. thereupon commenced a separate action in the Supreme Court of the State of New York, Bronx County, requesting the same relief sought by defendants, in the Supreme Court of the State of New York, New York County. This action was subsequently consolidated with the New York County Proceeding.

23. In April of 2001, various members ABB EV and the ABB Group contacted Lloyds in both New York and London regarding the Loan.

24. During the summer of 2001, ABB EV and Lloyds conducted negotiations regarding ABB EV's acquisition of certain documents related to the Loan (the "Lloyds's

Documents") and Lloyds's interest in the Loan.

25. On or about November 20, 2001, Lloyds's assigned to ABB EV all of its rights in the Loan and any and all interests in the Lloyds's Documents.

26. As consideration for this assignment of the Loan and the Lloyds's Documents, ABB EV paid to Lloyds an initial payment of $25,000 as well as a future stream of monthly payments which would total $240,000. In addition, if ABB EV ultimately obtained control of the Property because of the Lloyds Documents (and not through the exercise of the Option Agreement) then Lloyds would receive a final payment equal to 50% of the Loan or approximately $2,225,000.

27. On or about December 5, 2001, ABB EV assigned all of its rights and interests in the Loan and the Lloyds's Documents to Oak Point Property, Inc.

28. This adversary proceeding is initiated pursuant to Bankruptcy Code section 105 and Bankruptcy Rule 7001, et al., inter alia, for monetary damages suffered by the Debtor due to defendants' breach of contract, fraudulent inducement and material misrepresentation.

## I. JURISDICTION

29. This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

30. Each of the causes of action in this adversary proceeding are "core" proceedings within the meaning of 28 U.S.C. § 157(b)(2)(A)(G)(K) & (O).

31. This court is the proper venue pursuant to 28 U.S.C. § 1409(a).

## II. FIRST CAUSE OF ACTION FOR

## BREACH OF CONTRACT

32. Plaintiff repeats each and every allegation contained in paragraph 1 through 31 as though fully set forth herein

33. Prior to December 31, 1998, David Norkin on behalf of Britestarr received numerous offers for an option to purchase the Property that had an estimated value of between $40,000,000 and $50,000,000.

34. After receiving numerous offers for an option to buy the Property, Britestarr entered into the Option Agreement with ABB EV. To induce the Option Agreement, ABB EV represented that: (a) ABB Group owned a construction company that could easily handle construction of the intended development of the Oak Point Property into a 750 to 1000 megawatt ("MW") power plant; (b) ABB Group was, at such time, a partner in a joint venture called ABB-Alstom Power, which manufactured turbines and would provide the necessary turbines for the 750 to 1000 MW power plant; (c) ABB EV, while offering Britestarr lower option payments, agreed to grant the Debtor an internal rate of return of 21% on an equity ownership interest in the approximate 750 to 1000 MW power plant that ABB EV committed to construct, which would result in an annual distribution of $7,500,000 per year for thirty (30) years based upon the power plant's pro forma financial statements developed by ABB EV and provided to Debtor; (d) that ABB EV would subsequently provide Britestarr with a $3,000,000 to $5,000,000 loan against its expected ownership interest in, (and in fact, arranged a conference with ABB Group's bank president who supplied the terms and conditions of the proposed loan); and (e) ABB EV expected to exercise its option and have a financial closing by November 2000.

35. As a result of the representations made by ABB EV, Britestarr executed

the Option Agreement which, among other things, gave ABB EV the option, until December 31, 2001, to purchase the Property. A copy of the Option Agreement is annexed hereto and made a part of this Complaint.

36. While labeled an option agreement, the Option Agreement is essentially a real estate contract of sale, which if fulfilled, would have resulted in the construction of at least a 750 to 1000 MW power plant in New York City.

37. Pursuant to the Option Agreement, prior to the exercise thereof, ABB EV was obligated to conduct certain inspections, tests, surveys, and obtain all necessary permits to develop the Property into an operational power plant. These activities needed to be conducted prior to the financial closing on the Property which was to occur at or near the time the Option Agreement was exercised. Many of these activities (such as permitting) require eighteen (18) months or more to accomplish.

38. Despite its contractual obligations, defendants did virtually nothing to develop the Property. Defendants failed to conduct the necessary inspections, tests, surveys, failed to obtain the requisite permits and failed to carry out all other necessary procedures to permit the ultimate exercise of its option.

39. Defendants also failed to undertake in good faith or complete the due diligence necessary to commence the development of the electrical power plant.

40. ABB EV never ordered or reserved any of the major equipment necessary for the project, including the turbines necessary to generate the power. The turbines for a 750 to 1000 MW power plant cost hundreds of millions of dollars and, at the time the Option Agreement was entered into, required a year of more of manufacturing lead time because turbine

manufacturers had multiyear backlogs on production. In addition, the permits to be obtained for the power plant must be based upon the specific turbine model to be used at the site. Turbine models and/or manufacturers cannot be changed without causing significant permitting and construction delays. A purchaser must, therefore, deposit several million dollars with the turbine manufacturer at the time an order is placed to obtain a spot on the queue for production. By not obtaining a spot in the turbine production queue at the time the Option Agreement was executed or shortly thereafter, ABB EV knew that it could not possibly meet the milestone dates, including the projected closing date set forth in the Option Agreement. In fact, ABB EV has never placed any deposit for turbines for the Property. ABB EV therefore never had any intention to comply with its contractual obligations under the Option Agreement to build an electrical power plant, as it never ordered the necessary turbines, nor undertook any step to accomplish the legally required permitting activity.

41. The Option Agreement required ABB EV to provide Britestarr with copies of feasibility studies and other permitting and developmental procedures or reports. ABB EV failed to do so despite demand by Britestarr.

42. The Option Agreement required ABB EV to provide Britestarr with an accounting of expenditures it incurred in developing the power plant. ABB EV has failed to do so despite demand by Britestarr.

43. ABB EV failed to obtain or attempt to obtain the major permits, such as the air and water permits for the power plant as required by the Option Agreement.

44. Defendants have breached the Option Agreement by failing to comply with material obligations under the Option Agreement.

45. Defendants have breached the Option Agreement by failing to take the aforementioned necessary steps to develop a power-plant as set forth above.

46. ABB EV has breached the Option Agreement by failing to act in good faith.

47. As a result of ABB EV's breaches, Britestarr has suffered monetary damages including: lost option payments during the period when the termination of the Option Agreement was (and remains) stayed in New York State Court; the difference between the option price agreed with ABB EV based on the inducements made by ABB EV and prior offers made to purchase the property; the amount of money lost from the proposed equity ownership; the lost additional opportunity during the time ABB EV engaged in litigation to prevent development of the property as well as costs and attorneys fees.

### III. SECOND CAUSE OF ACTION OF FRAUDULENT INDUCEMENT AND MISREPRESENTATION OF FACTS

48. Plaintiff reiterates and repeats each and every paragraph numbered 1 to 47 as though fully set forth herein.

49. Defendants fraudulently induced the plaintiff into entering into this Option Agreement by making the following inducements it either never meant to satisfy and/or knew it did not have the means necessary to carry out:

(a) ABB Group owned a construction company that could easily handle the construction and development of the Property;

(b) ABB Group was a partner in the ABB-Alstom Power joint venture which

manufactures turbines and ABB-Alstom Power would provide the necessary turbines;

(c) ABB Group agreed to grant Britestarr an internal rate of return of 21% on an equity ownership interest in the resulting 750 to 1000 MW power plant for thirty (30) years;

(d) ABB Group promised Britestarr a three to five million dollars ($3,000,000 to $5,000,000) loan against its expected ownership interest and arranged a conference with ABB Group's bank president; and

(e) ABB-EV expected to exercise the Option Agreement and to have a financial closing by November 2000.

50. ABB EV never obtained a commitment, nor placed an order with ABB-Alstom Power for turbines for the power plant.

51. The ABB Group sold its interest in the ABB-Alstom Power joint venture in May 2000, and the ABB Group no longer manufactures the turbines used in power plants of the type proposed in the Option Agreement.

52. ABB EV never obtained a commitment nor did it enter into an agreement with the ABB Group's construction company to engineer, procure, and construct a 750 to 1000 MW power plant on the Property.

53. Defendants fraudulently induced plaintiff into this Option Agreement by falsely stating it had the full financial and manufacturing commitment of the ABB Group to the construction of a 750 to 1000 MW power plant on the Property.

54. Defendants induced plaintiff into entering into this Option Agreement by

promising to Britestarr, an internal rate of return of 21% on its equity ownership interest in the resulting 750 to 1000 MW power plant, which was valued at seven million five hundred thousand ($7,500,00) dollars per year for thirty (30) years (pursuant to the pro forma financial statements provided by ABB EV to Britestarr), causing plaintiff to suffer an aggregate loss of Two Hundred Twenty Five Million ($225,000,000).

55. Defendants materially misrepresented that it was itself committed to constructing a 750 to 1000 power plant on the Property.

56. The statements made by defendants were false when made or made recklessly without regard to actual fact or intention.

57. The statements made by defendants were made with the intention to deceive and defraud plaintiff to induce it to enter into the Option Agreement.

58. Plaintiff relied on defendants' misrepresentations and did not learn the truth until on or about January 2001.

**WHEREFORE**, Britestarr prays for Judgment against the defendants, jointly and severally as follows:

(1) The benefit of having the December 31, 2001, expiration of the Option Agreement stayed during litigation in New York State Court............................................$100,000/month

(2) The difference between the price previously offered Britestarr for the Property and the price agreed with defendants based on its inducements.......................$15,000,000

(3) The loss of the internal rate of return on an equity ownership interest in the resulting power plant, which was valued at $7,500,000.00 per year for thirty (30) years...................................................................An amount to be determined at trial.

(4) Punitive Damages................................................................ An amount to be determined at trial.

(5) Such other and further relief as this Court may deem appropriate.

Dated: New York, New York
      June 13, 2002

                                        BRITESTARR HOMES, INC.

                              By:      s/John J. Nonnenmacher
                                        John J. Nonnenmacher (JJN-0007)
                                        Attorney for Plaintiff/Debtor
                                        350 Fifth Avenue
                                        Suite 1700
                                        New York, New York 10018
                                        (212) 465-1110

Newy1 3618286v4